UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL GULACSY, Individually and On
Behalf of All Others Similarly Situated,

    Plaintiff,

    v.

SUNDIAL GROWERS INC., TORSTEN
KUENZLEN, JAMES KEOUGH, EDWARD
HELLARD, GREG MILLS, GREGORY
TURNBULL, LEE TAMKEE, and ELIZABETH
CANNON,

    Defendants.

Case No:

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

JURY TRIAL DEMANDED

Plaintiff Daniel Gulacsy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States Securities and Exchange Commission ("SEC") filings by Sundial Growers Inc. ("Sundial" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**<u>NATURE OF THE ACTION</u>**

1.    Plaintiff brings this securities class action on behalf of persons who purchased or otherwise acquired Sundial common shares pursuant and/or traceable to the Company's Registration Statement (defined below) issued in connection with Sundial's August 1, 2019

initial public share offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2. In August 2019, Defendants held the IPO, issuing approximately 11 million Sundial common shares to the investing public at $13.00 per share, pursuant to the Registration Statement.

3. By the commencement of this action, Sundial's shares trade significantly below its IPO price.  As a result, investors were damaged.

## JURISDICTION AND VENUE

4. The claims alleged herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District.  Pursuant to the Underwriter Agreement (defined below), the Southern District of New York is an appropriate venue.

7. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.  Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Sundial securities in this District.

## PARTIES

8.      Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Sundial common shares pursuant and/or traceable to the IPO and was damaged thereby.

9.      Defendant Sundial is incorporated in the Province of Alberta, Canada, and maintains its principal executive offices in Calgary in Alberta, Canada.  Sundial purports to produce and market craft pioneering cannabis brands to "Heal, Help and Play."  Sundial operates five facilities, including two facilities in Alberta, Canada, and three in the United Kingdom, and as of August 2019, was building a third Canadian facility in British Columbia.  Sundial's shares are listed on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "SNDL." The Company's registered agent for service of process in the United States is Corporation Service Company, 1180 Avenue of the Americas, Suite 210, New York, NY 10036-8401.  The transfer agent and registrar for Sundial's common shares in the United States is Equity Stock Transfer, LLC, at its principal office in New York, New York.

10.      Defendant Torsten Kuenzlen ("Kuenzlen") served as a member of Sundial's Board of Directors (the "Board") and the Company's Chief Executive Officer ("CEO") at all relevant times.  At the time of the IPO, Kuenzlen owned approximately 3.7 million Sundial shares, or 4.94% of the Company's common shares.  Defendant Kuenzlen signed or authorized the signing and issuance of the Registration Statement.

11.      Defendant James Keough ("Keough") served as the Chief Financial Officer ("CFO") of Sundial at all relevant times.  Defendant Keough reviewed, contributed to, and signed or authorized the signing and issuance of the Registration Statement.

12.      Defendant Edward Hellard ("Hellard") served as Sundial's Executive Chairman of the Company's Board at all relevant times.   At the time of the IPO, Hellard owned

approximately 24.5 million Sundial shares, or 32.3% of the Company's common shares. Defendant Hellard signed or authorized the signing and issuance of the Registration Statement.

13.     Defendant Greg Mills ("Mills") served as the Non-Executive Chairman of the Company's Board at all relevant times.  Defendant Mills signed or authorized the signing and issuance of the Registration Statement.

14.     Defendant Gregory Turnbull ("Turnbull") served as a member of the Company's Board at all relevant times.  Defendant Turnbull signed or authorized the signing and issuance of the Registration Statement.

15.     Defendant Lee Tamkee ("Tamkee") served as a member of the Company's Board at all relevant times.  Defendant Tamkee signed or authorized the signing and issuance of the Registration Statement.

16.     Defendant Elizabeth Cannon ("Cannon") served as a member of the Company's Board at all relevant times.  Defendant Cannon signed or authorized the signing and issuance of the Registration Statement.

17.     Defendants Kuenzlen, Keough, Hellard, Mills, Turnbull, Tamkee, and Cannon are referred to herein as the "Individual Defendants."  The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Sundial investors, all motivated by their own and the Company's financial interests.

18.     Sundial and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Sundial purports to be a producer and marketer of premium cannabis for the adult-use market.

20.     On or about July 30, 2019, Sundial filed with the SEC an amended registration statement on Form F-1 (Registration No. 333-232573), which was signed by the Individual Defendants and was declared effective on August 1, 2019 (the "Registration Statement").

21.     Sundial and the underwriters for the IPO entered into an underwriting agreement, dated July 31, 2019, with respect to the shares being offered in the IPO (the "Underwriting Agreement").  Subject to the terms and conditions of the underwriting agreement, each of the underwriters severally agreed to purchase from Sundial the number of shares set forth opposite its name below at a price of US$13.00 per share payable in cash on the closing date of the IPO:

| Underwriter | Number of Shares |
|---|---|
| Cowen and Company, LLC | 3,575,000 |
| BMO Nesbitt Burns Inc. | 3,135,000 |
| RBC Dominion Securities Inc. | 1,760,000 |
| Barclays Capital Canada Inc. | 990,000 |
| CIBC World Markets Inc. | 990,000 |
| Scotia Capital Inc. | 550,000 |
| Total | 11,000,000 |

22.     On August 1, 2019, Sundial filed with the SEC the final prospectus for the IPO of common shares on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement, and sold 11 million Sundial common shares to the investing public at $13.00 per share for gross proceeds of approximately $134.4 million, excluding $8.58 million in commissions paid to the IPO's underwriters.

23.     On August 1, 2019, the Company's shares were listed for trading on the NASDAQ in United States dollars under the ticker symbol "SNDL."

24.     On August 1, 2019, Defendant Kuenzlen rang the opening bell on the day of the IPO in New York and Company representatives, including Defendants Hellard, Keough and Cannon, visited the NASDAQ MarketSite in Times Square in New York City.

**Materially False and Misleading Statements Issued in the Registration Statement**

25.     The Registration Statement represented that Sundial was a producer of "high-quality cannabis in small batches" and that "we produce high-quality, consistent cannabis" and that the Company's operating model results in "strong customer loyalty."

26.     These representations were untrue statements of material fact because, before the IPO, due to material quality issues, Zenabis Global Inc. ("Zenabis"), a Sundial customer, had returned or rejected a total of 554 kg of cannabis (approximately 1,221 pounds) to Sundial.  The cannabis shipped by Sundial to Zenabis was low quality and was returned to Sundial because it contained visible mold, parts of rubber gloves, and other non-cannabis material.

27.     Moreover, the Registration Statement purported to warn investors about risks of failure of Sundial's quality control systems, contamination of, or damage to, its cannabis inventory, while failing to disclose that a material failure had already occurred:

> ***Failure in our quality control systems may adversely impact our sales volume, market share and profitability.***
>
> The quality and safety of our products are critical to the success of our business and operations. As such, it is imperative that our (and our service providers') quality control systems operate effectively and successfully. Quality control systems can be negatively impacted by the design of the quality control systems, the quality training program, and adherence by employees to quality control guidelines. Although we strive to ensure that all of our service providers have implemented and adhere to high caliber quality control systems, we could experience a significant failure or deterioration of such quality control systems. If, as a result of a failure in our (or our service providers') quality control systems, contamination of, or damage to, our inventory or packaged products occurs, we may incur significant costs in replacing the inventory and recalling products. We may be unable to meet customer demand and may lose customers who have to purchase alternative brands or products. In addition, consumers may lose confidence in the affected products. A loss of sales volume from a contamination

> event may occur, and such a loss may affect our ability to supply our current
> customers and to recapture their business in the event they are forced to switch
> products or brands, even if on a temporary basis. We may also be subject to legal
> action as a result of a contamination, which could result in negative publicity and
> affect our sales. During this time, our competitors may benefit from an increased
> market share that could be difficult and costly to regain.

Plainly, the foregoing risk warning was a merely generic "catch-all" provision that was not

tailored to Sundial's actual known contamination risks.

28.     These representations in the Registration Statement contained untrue statements

of material fact because, before the IPO, Sundial's quality control systems had already been

negatively impacted as Sundial had already experienced a material failure or deterioration of

such quality control systems, and Sundial's quality control systems failed to operate effectively

and successfully.  At the time of the IPO, Sundial failed to disclose that: (i) Sundial failed to

supply saleable cannabis in line with contractual obligations to Zenabis; and (ii) because of

material quality issues, Zenabis had to return or reject a total of 554 kg of cannabis from Sundial,

valued at approximately US$1.9 million (C$2.5 million).

29.     The Registration Statement represented the following concerning contingencies as

of December 31, 2018, while failing to disclose material facts concerning contingencies related

to Sundial's supply agreement with Zenabis that had occurred at the time of the IPO:

**Contingencies**

* * *

> We have entered into several supply agreements to provide dried cannabis and
> cannabis products to certain other licensed producers. The contracts require the
> provision of various amounts of dried cannabis on or before certain dates. In the
> fiscal year ended December 31, 2018, we recorded $3.3 million in expenses
> resulting from a settlement, litigation reserve and penalty associated with our non-
> delivery of products under certain of these agreements within the agreed time
> frame.

30.    These representations in the Registration Statement contained untrue statements of material fact because Sundial failed to disclose that at the time of the IPO: (i) Sundial failed to supply saleable cannabis in line with contractual obligations to Zenabis; and (ii) because of material quality issues, Zenabis had to return or reject a total of 554 kg of cannabis to Sundial, valued at approximately US$1.9 million (C$2.5 million).

### The Truth Begins to Emerge

31.    On August 16, 2019, *Marketwatch* published an article that stated, in part, that the "newest cannabis company on Wall Street, Sundial Growers Inc., sold a half ton of pot that was returned by corporate buyer Zenabis Global Inc. because it contained visible mold, parts of rubber gloves and other non-cannabis material, according to people familiar with the matter. The attempted sale would be the equivalent of 10% of Sundial's total second-quarter cannabis sales of five metric tons. The batch of cannabis would be worth roughly C$2.5 million ($1.9 million), assuming a price of C$5 per gram."

32.    The *Marketwatch* article also stated that the Company "included a number of risks around inventory spoilage in its IPO filing but not did not include a reference to a half ton of returned cannabis. Sundial did not mention the half-ton return during a road show presentation in Toronto, according to one investor who heard the pitch."  Additionally, "[i]n the IPO filing and its quarterly-earnings filing with the Securities and Exchange Commission, the company disclosed about $3.3 million in penalties for not delivering cannabis as promised to partners; those contingencies were from 2018."

33.    Since the IPO, and as a result of the disclosure of material adverse facts omitted from Sundial's Registration Statement, Sundial's share price has fallen substantially below its IPO price, damaging Plaintiff and Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action on behalf of all those who purchased Sundial common shares pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Sundial or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      a.   whether Defendants violated the Securities Act;

b.   whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

c.   to what extent the members of the Class have sustained damages and the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**(Violations of Section 11 of the Securities Act Against All Defendants)**

40.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

41.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

42.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

43.    Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions contained in the Registration Statement.

44.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

45.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated Section 11 of the Securities Act.

46.     Plaintiff acquired Sundial common shares pursuant to the Registration Statement.

47.     At the time of their purchases of Sundial common shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

48.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering, and is therefore timely.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Individual Defendants)**

49.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness, or intentional misconduct.

50.     This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against the Individual Defendants.

51.     The Individual Defendants were controlling persons of Sundial by virtue of their positions as directors or senior officers of Sundial.  The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Sundial.  The Company controlled the Individual Defendants and all of Sundial's employees.

52.     Sundial and the Individual Defendants were culpable participants in the violations of Section 11 of the Securities Act as alleged above, based on their having signed or authorized

the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

53.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering, and is therefore timely.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

A.     Declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

B.     Awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

C.     Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  November 1, 2019                    Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman

J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, <u>Daniel F Gulacsy</u>, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Sundial Growers Inc. ("Sundial" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Sundial securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Sundial securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Sundial securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _____10|17|19_____
              **(Date)**


                          _____
                                   **(Signature)**

                          _____
                              **(Type or Print Name)**

**Sundial Growers Inc. (SNDL)**                                          **Gulacsy, Daniel F**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 8/6/2019 | Purchase | 100 | $12.3600 |
| 8/13/2019 | Purchase | 25 | $10.4700 |
| 9/5/2019 | Purchase | 25 | $8.1900 |
| 9/30/2019 | Purchase | 200 | $4.2100 |
| 10/1/2019 | Purchase | 60 | $4.8900 |